## A10A0751. MANDATO & ASSOCIATES, INC. v. SEPULVEDA MASONRY et al.

(693 SE2d 620)

BLACKBURN, Presiding Judge.

In this negligent construction action, Builders Insurance Group in the name of its insured (a general contractor) appeals the partial summary judgment granted to four subcontractors of the general contractor, which subcontractors Builders[1] had sued to recover the $325,000 it had paid in settlement of a prior claim brought against the general contractor. Builders had alleged that the four subcontractors (Sepulveda Masonry, K&K Installers, Inc., Steve Crain, and Jasper Lumber Company) had negligently performed their subcontracts in constructing a residence for a homeowner, with which homeowner Builders had settled a prior claim asserted against the general contractor for faulty construction. The trial court granted partial summary judgment against Builders and in favor of the four subcontractors,[2] concluding that Builders had failed to obtain the written consent of its insured to the prior settlement, and that therefore, under OCGA § 33-7-12 (a), Builders had no right of subrogation against the subcontractors. We agree and affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[3]

So viewed, the evidence shows that on October 31, 2003, the general contractor executed a contract to build a residence for a homeowner. The general contractor hired numerous subcontractors, including the four subcontractors here, to perform various portions of the work. Dissatisfied with the quality of the construction, the homeowner brought a claim against the general contractor, which claim was defended by Builders. The general contractor also asserted a counterclaim for monies remaining due on the construction of the home.

The homeowner, the general contractor, and Builders participated in a mediation of the matter, concluding in an offer by the homeowner to settle the case in exchange for $325,000 and a

---

[1] Although the action was filed in the name of the general contractor (Mandato & Associates, Inc.), Builders concedes that it was a subrogation action brought by Builders in the name of the general contractor.

[2] The grant was as to all claims against the subcontractors except as such pertained to the $1,000 deductible paid by the general contractor under the insurance policy.

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997).

dismissal of the counterclaim. The homeowner gave Builders and the general contractor ten days to accept the offer. Builders and the general contractor acknowledged receipt of the offer by signing a document evidencing the offer. Twenty days later, the homeowner received a check from Builders for $325,000 and unilaterally executed a release of all claims against the general contractor and Builders. All claims in the suit were apparently dismissed.

Based on its subrogation rights contained in its insurance policy with the general contractor, Builders brought the present action in the name of the general contractor against the four subcontractors here,[4] seeking to recover the $325,000. Each of these subcontractors moved for summary judgment under OCGA § 33-7-12 (a), arguing that because Builders had failed to obtain the written consent of the general contractor to the $325,000 settlement, it had acted as an independent contractor and was not entitled to assert any subrogation rights under the insurance policy.[5] Finding no written consent by the general contractor to Builders's settlement payment, the trial court granted partial summary judgment to the four subcontractors, allowing the claims to proceed only insofar as they concerned the general contractor's payment of its $1,000 deductible under the policy.[6] In the name of its insured, Builders appeals.

The key to this appeal is the application of OCGA § 33-7-12 (a), which provides in pertinent part:

> Any provision in a liability policy of insurance which provides that the insurer shall have the right to compromise or settle claims of third persons against the insured without the consent of the insured shall be deemed to create, as between the insurer and the insured, the relationship of an independent contractor . . . , unless the insured shall previously have consented in writing to relinquish his claim or cause of action. . . .

Interpreting this statute, *Carden v. Burckhalter*[7] held:

> Under OCGA § 33-7-12 (a), a provision which permits the

---

[4] A fifth subcontractor failed to answer, resulting in a default judgment against that subcontractor exceeding $100,000.

[5] Three of the subcontractors also moved for summary judgment on the basis that no evidence showed they acted negligently. However, the trial court ruled in their favor solely on the basis of OCGA § 33-7-12 (a). "We do not address the other grounds raised in the motion[s] for summary judgment below, as such were not argued on appeal nor ruled upon by the trial court below." *Rodrigues v. Ga.-Pacific Corp.*, 290 Ga. App. 442, 446 (661 SE2d 141) (2008).

[6] The general contractor was required to pay the $1,000 deductible regardless of whether it consented in writing to any settlement.

[7] *Carden v. Burckhalter*, 214 Ga. App. 487, 489 (2) (b) (448 SE2d 251) (1994).

> insurer to compromise claims or defenses of the insured without his consent *"shall be deemed to create . . . the relationship of an independent contractor."* The designation in OCGA § 33-7-12 of [the insurance company] as "independent contractor" establishes as a matter of law that its payment made without [the insured's] written consent was not made as his insurer under the policy of insurance.

(Emphasis in original.) Based on this analysis, *Carden* reasoned that in the absence of such written consent, the insurance company "has no right of subrogation because it did not make a payment to [the claimant] as insurer or agent of the insured under [the] policy." Id. *Carden* concluded: "OCGA § 33-7-12 was enacted to protect the insured and is in derogation of common law and must be strictly construed. Construing the statute strictly, a payment made by an 'independent contractor' is not made 'under the policy.' " (Citation omitted.) Id. at 490 (2) (c). Accordingly, because no written consent was obtained in *Carden*, we affirmed the trial court's decision to enter judgment against the insurance company on the insurance company's subrogation claim. See *BBL-McCarthy, LLC v. Baldwin Paving Co.*[8] (absent insured's consent to insurance company's settlement payment, the insurance company, "as subrogee under [the] insurance policy, has no right to recover indemnification for its settlement payment to the . . . plaintiffs").

There is no dispute here that Builders's policy with the general contractor permitted it to compromise and settle claims asserted against the general contractor without its consent. There is also no dispute that the basis for Builders's claims in this matter against the four subcontractors was its settlement payment of $325,000 to the homeowner. Thus, the only question is whether the written mediation offer or the written release could constitute evidence of the general contractor's written consent to Builders's settlement payment to the homeowner.

The construction of a contract is a question of law for the court based on the intent of the parties as set forth in the contract, which construction we review de novo. *Deep Six, Inc. v. Abernathy.*[9] "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction." OCGA § 13-2-3. Thus, "when the terms of a written contract

---

[8] *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 285 Ga. App. 494, 501 (2) (646 SE2d 682) (2007).

[9] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

are clear and unambiguous, the court is to look to the contract alone to find the parties' intent." (Punctuation omitted.) *Owners Ins. Co. v. Smith Mechanical Contractors.*[10] Only if the contract is ambiguous in some respect do we apply the rules of contract construction to resolve the ambiguity. *Avion Systems v. Thompson.*[11] "Parol evidence is not admissible to contradict or construe an unambiguous contract." (Punctuation omitted.) *Unifund Financial Corp. v. Donaghue.*[12]

There are only two writings here which could arguably serve as the general contractor's written consent to Builders's $325,000 payment to the homeowner.[13] The first was the settlement offer resulting from the mediation, in which the homeowner offered to settle the matter for $325,000, which offer was to remain open for ten days. The general contractor acknowledged receipt of this offer by signing the offering document. By no means did this unambiguous document constitute the general contractor's written consent to Builders's paying money to the homeowner. Rather, it was merely an offer to be accepted by the general contractor and by Builders in the future, as reflected in the very language of the document. Indeed, the preprinted language that the general contractor was agreeing to the payment was struck through, and the parties handwrote in the language that this was nothing more than an "offer to settle this case," and that "said offer shall remain open until 5:00 p.m. on December 7, 2007 [ten days later] at which time said offer to settle shall expire unless it has been accepted by Builders Insurance Company and [the general contractor]."

The second document was the homeowner's general release of Builders and of the general contractor, which release the homeowner executed upon receipt of the $325,000 payment from Builders. But this document was executed by the homeowner and his attorney only; indeed, the document did not even provide any signature lines for the general contractor to indicate its consent to the payment. Accordingly, regardless of the language of the document, this document also cannot constitute evidence that the general contractor

---

[10] *Owners Ins. Co. v. Smith Mechanical Contractors*, 285 Ga. 807, 808-809 (2) (683 SE2d 599) (2009).

[11] *Avion Systems v. Thompson*, 293 Ga. App. 60, 63 (2) (a) (666 SE2d 464) (2008).

[12] *UniFund Financial Corp. v. Donaghue*, 288 Ga. App. 81, 82-83 (653 SE2d 513) (2007).

[13] Builders claims that there is a third writing — the insurance policy itself, which allowed it to settle claims without the general contractor's consent. This argument is circular, as it would mean that every insurance policy allowing the insurer to settle a claim without consent of the insured would *automatically* constitute evidence of consent to any and all settlement payments by the insurer. Thus, there would *never* be a requirement for a written consent to a settlement payment, which requirement is set forth in the statute itself and reiterated in *Carden*, supra, 214 Ga. App. at 489 (2) (b).

consented in writing to the settlement payment. The affidavit of the principal of the general contractor, in which the principal testified that he orally consented to the payment, is to no avail, as OCGA § 33-7-12 (a) and *Carden*, supra, 214 Ga. App. at 289 (2) (b), specifically require that the consent be *in writing*.

For these reasons, the trial court did not err in granting partial summary judgment to the four subcontractors, which ruling allowed only the general contractor's claim for its $1,000 deductible payment to survive.

*Judgment affirmed. Barnes and Bernes, JJ., concur.*

DECIDED APRIL 6, 2010.

*Hall, Booth, Smith & Slover, W. Jason Pettus, Sean L. Gill*, for appellant.

*Misner, Scott & Martin, Neal C. Scott, Savell & Williams, William E. Turnipseed, Mark J. Boyd, Goodman, McGuffey, Lindsey & Johnson, Robert A. Luskin, Kevin A. Spainhour, Michael A. Penn, Glenn E. Cooper*, for appellees.